# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

MICHAEL CUMMINGS,      )
                          )
      Plaintiff,       )
                          )
vs.                         )     Case No.  CIV-14-539-L
                          )
CAROLYN W. COLVIN, acting  )
Commissioner Social Security  )
Administration,         )
                          )
      Defendant.     )

## REPORT AND RECOMMENDATION

Defendant Acting Commissioner (Commissioner) issued a final decision partially denying Michael Cummings' (Plaintiff) applications for disability insurance benefits and supplemental security income under the Social Security Act, and Plaintiff seeks judicial review under 42 U.S.C. § 405(g). United States District Court Judge Tim Leonard referred the matter for proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b), and it is now before the undersigned Magistrate Judge.  The undersigned has reviewed the pleadings, the administrative record (AR), and the parties' briefs,[1] and recommends that the court affirm the Commissioner's decision.

---

[1]    When citing to the parties' briefs, the undersigned refers to this Court's CM/ECF pagination.  Further, unless otherwise specified, the undersigned reprints all quotes verbatim.

## I. Administrative proceedings.

Plaintiff applied for disability insurance benefits and supplemental security income alleging that he became disabled on February 7, 2005. AR 160, 726. The Social Security Administration (SSA) denied Plaintiff's claims, and at his request, an ALJ conducted a hearing. *Id.* at 741-82. In September 2008, the ALJ rendered a partially favorable decision, finding that Plaintiff was disabled from February 7, 2005, through August 14, 2006, but that his disability ended on August 15, 2006. *Id.* at 50-51. Plaintiff sought review, and the SSA Appeals Council remanded the case back to the ALJ for further consideration. *Id.* at 64-66. The same ALJ conducted a second hearing, whereat a medical expert (ME) testified. *Id.* at 783-829. During that hearing, Plaintiff amended his alleged onset date to August 20, 2007. *Id.* at 788. In July 2012, the ALJ rendered another partially favorable decision, finding that Plaintiff was *not* disabled from August 20, 2007, through March 27, 2012, but *was* disabled after March 27, 2012. *Id.* at 31-32. The SSA Appeals Council declined Plaintiff's request for review, *id.* at 8-10, and Plaintiff now seeks review in this Court. Doc. 1.

## II. The ALJ's findings.

Following the well-established five-step inquiry to determine whether a claimant is disabled, *see* 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f); *see also*

*Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing five steps), the ALJ found that Plaintiff: (1) met the insured status requirements through December 31, 2012; (2) has not engaged in substantial gainful activity after August 20, 2007; and (3) has severe "status post hemilaminotomy; degenerative disc disease; seizure disorder; and hypertension."[2] AR 20. The ALJ then found that, from August 20, 2007, to March 27, 2012, Plaintiff: (1) had the residual functional capacity (RFC) assessment to perform light work with several exertional limitations, *id.* at 24, and (2) could perform other jobs existing in significant numbers in the national economy. *Id.* at 29-30.

## III. Plaintiff's claims.

Plaintiff challenges the Commissioner's decision that he was not disabled from August 20, 2007, to March 27, 2012, on grounds that the ALJ: (1) should have recontacted the treating physician and/or ordered a consultative examination; (2) erred in weighing the medical opinions; (3)

---

[2] The ALJ further found that beginning on March 27, 2012, Plaintiff "has had the additional severe impairment of pancreatic cancer." AR 20 (citation omitted). Based on that impairment, the ALJ found that Plaintiff became disabled on March 27, 2012. *Id.* at 31-32. Plaintiff does not challenge that favorable ruling.

failed to properly evaluate his credibility; and (4) improperly evaluated his daughter's testimony.[3] Doc. 18, at 15-28.[4]

## IV. Analysis.

### A. Standard of review.

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). In reviewing the ALJ's opinion, "common sense, not technical perfection, is [the court's] guide." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012).

---

[3] At times, Plaintiff focuses specifically on ways that the ALJ failed to precisely follow the SSA Appeals Council's remand order, Doc. 18, at 16-18; however, he does not present this argument as a proposition of error. *Id.* at 15-28. To the extent that the court could read Plaintiff's statements as a distinct argument for remand, it would fail. *See Miller v. Barnhart*, 175 F. App'x 952, 956 (10th Cir. 2006) (holding that when the SSA Appeals Council declines review after having ordered a remand, "it is appropriate to examine the Commissioner's final decision under our usual standards, rather than focusing on conformance with the particular terms of the remand order" (citations omitted)).

[4] Plaintiff presented his arguments in a different order. For continuity, the undersigned has elected to address Plaintiff's arguments in the order designated above.

## B. The ALJ's decision not to recontact the treating physician and/or order a consultative examination.

When Dr. Ollie Raulston, the medical expert, testified, he expressed his frustration that neither Plaintiff's treating physician, Dr. Melvin L. Robison, nor his nurse practitioner, Ms. Edwinna Smith, ARPN, had supported their opinions with physical examination findings or "meaningful information from . . . a musculoskeletal standpoint[.]" AR 791. The ME recommended that the ALJ order a consultative examination, but ultimately testified that based on the numerous MRI results, he found "no basis in the record" that Plaintiff was limited to sedentary work. *Id.* at 791, 792 ("With all the records available, it's amazing that there's little, if any, meaningful exam findings."). On cross-examination, Dr. Raulston stated that he did not "have enough information . . . to agree or disagree with [Ms. Smith's] opinion[s]," but also testified that while the MRI studies could "possibl[y]" support Ms. Smith's opinions, he could not say that it was "probable." *Id.* at 796-98.

Citing the ME's concerns, Plaintiff argues that the ALJ had a duty to recontact Dr. Robison to gain additional information and/or to order a consultative examination. Doc. 18, at 23. The undersigned disagrees.

Once, an ALJ "was *required* to recontact a treating source when the evidence received from a treating source was deemed inadequate for the ALJ to determine whether a claimant was disabled." *Borgsmiller v. Astrue*, 499 F.

App'x 812, 815 (10th Cir. 2012) (citing *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001) (emphasis added)). Then, in March 2012, the SSA amended 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) to give an ALJ more flexibility and discretion in deciding whether to recontact a treating source. *See id.* at 815 & n.4 (noting that the new regulations became effective in March 2012); *see also How We Collect and Consider Evidence of Disability*, 77 FR 10651-01 (dated Feb. 23, 2012) ("We are modifying the requirement to recontact your medical source(s) first when we need to resolve an inconsistency or insufficiency in the evidence he or she provided. . . . By giving adjudicators more flexibility in determining how best to obtain this information, we will be able to make a determination or decision on disability claims more quickly and efficiently in certain situations."). So, when the ALJ issued her opinion in July 2012, the regulations stated that if she had "insufficient evidence to determine whether [Plaintiff] [was] disabled," she *may* recontact the treating physician or *may* schedule a consultative examination. 20 C.F.R. §§ 404.1520b, 416.920b. The new regulations further stated that an ALJ "may choose not to seek additional evidence or clarification from a medical source" if it is clear "that the source either cannot or will not provide the necessary evidence." *Id.* §§ 404.1520b(c)(1), 416.920b(c)(1).

Plaintiff's quest for reversal on this issue fails for three reasons. First and foremost, Dr. Robison's and Nurse Smith's failure to perform sufficient physical examinations to support their opinions *does not* create an inconsistency or insufficiency in the *evidence*. In other words, their medical records were "not so incomplete that [they] could not be considered," *White*, 287 F.3d at 908, the records simply did not support their ultimate opinions. *See infra* § IV(C)(2), (3); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (holding that an ALJ may refuse to give controlling weight to a physician's opinion if "medically acceptable clinical" techniques do not support it). "[I]t is not the rejection of the treating physician's opinion that triggers the [now flexible discretion] to recontact the physician." *White*, 287 F.3d at 908; *see also Russell v. Astrue*, 506 F. App'x 792, 795 (10th Cir. 2012) ("Here, the ALJ did not find Dr. Leslie's evidence incomplete or in need of clarification; he simply found it unsupported and inconsistent with the medical evidence viewed in its entirety. Thus, the ALJ was not obligated to re-contact Dr. Leslie.").

Second, the ALJ had *additional* medical evidence in the record, most notably the multiple MRI scans and the ME's opinion,[5] in which to find that

---

[5] The undersigned finds that the ALJ committed no error in giving the ME's opinion substantial weight. *See infra* § IV(C)(5).

Plaintiff was not disabled from August 20, 2007 to March 27, 2012. So, because the *evidence as a whole* was adequate to evaluate Plaintiff's impairments, the ALJ did not abuse her discretion in failing to recontact the treating physician or order a consultative examination. *See, e.g., Beasley v. Colvin*, 520 F. App'x 748, 752 (10th Cir. 2013) (noting that in the light of multiple sources of medical evidence, the "ALJ had no duty to recontact [the physician] . . . because the evidence was adequate to evaluate whether [the claimant] was disabled").

Third and finally, the only "inadequacy" in Dr. Robison and Nurse Smith's notes involve the lack of relevant physical-examination findings during Plaintiff's visits. Plaintiff does not suggest that either Dr. Robison or Nurse Smith had additional physical examination notes that they failed to submit, and thus "it does not appear . . . that further contact with [Dr. Robison or Nurse Smith] would have provided the ALJ more clarity." *Borgsmiller*, 499 F. App'x at 816 (rejecting plaintiff's claim that the ALJ should have recontacted the physician to clarify the number of her fibromyalgia flares, in part because she "has not argued that there are existing reports that [her physician] could have provided the ALJ that would have assisted her in ascertaining the basis for his opinions").

For all of these reasons, the undersigned finds that the ALJ did not abuse her discretion in failing to recontact the treating physician or order a consultative examination.

**C. The ALJ's alleged errors in weighing the medical opinions.**

Plaintiff also alleges numerous errors with the weight the ALJ assigned to the medical opinions. The undersigned finds no grounds for reversal.

### 1. The standard for evaluating medical opinions.

"An ALJ must evaluate every medical opinion in the record, . . . although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citation omitted). For example, an "ALJ is required to give controlling weight to the opinion of a treating physician as long as the opinion is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Id.* (citation omitted). "If an ALJ intends to rely on a nontreating physician or examiner's opinion, [s]he must explain the weight [s]he is giving to it." *Id.* (citation omitted). Some factors an ALJ may consider when weighing medical opinions include:

(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001) (citation omitted).

A nurse practitioner is not an "acceptable medical source"; nevertheless, an ALJ must consider and weigh a nurse practitioner's opinion. *Frantz v. Astrue*, 509 F.3d 1299, 1301-02 (10th Cir. 2007). SSR 06-03p provides a guide, and encourages an ALJ to consider: (1) "[h]ow long the source has known and how frequently the source has seen the individual"; (2) "[h]ow consistent the opinion is with other evidence"; (3) "[t]he degree to which the source presents relevant evidence to support an opinion"; (4) "[h]ow well the source explains the opinion"; (5) "[w]hether the source has a specialty or area of expertise related to the individual's impairment(s)"; and (6) "[a]ny other factors that tend to support or refute the opinion." SSR 06-3p, 2006 WL 2329939, at *4-5 (Aug. 9, 2006).

## 2.    The treating physician's opinion.

The ALJ discussed the treating physician's physical residual functional capacity questionnaire and gave it "little weight."  AR 27.  The ALJ reasoned that Dr. Robison's opinion that "the claimant must walk around every five minutes for five minutes at a time throughout the day" "seems less than practical and is inconsistent with the earlier finding that [Plaintiff] can sit and stand in increments of ten minutes each."  *Id.*  The ALJ further noted that:

> [T]he standing limitation of about two hours is not supported by any objective medical evidence or Dr. Robison's own contemporaneous treating medical records that are silent concerning any problems with gait, ambulation, or standing.  The computer generated narrative office notes of Dr. Robison do not identify any objective findings, other than sporadic mention of decreased ranges of lumbar motion.  Rather, it appears that Dr. Robison prescribed ongoing medications based upon [Plaintiff's] subjective complaints of pain.  At best, this opinion of Dr. Robison was prepared speculatively[.]

*Id.*

Plaintiff first challenges the ALJ's decision on grounds that she failed to "state with <u>specificity</u> what weight" she gave Dr. Robison's opinion.  Doc. 18, at 17 (emphasis in original).  However, he then concedes that the "ALJ's decision states that [she] accorded Dr. Robison's opinion 'little weight' . . . ."  *Id.* at 18.  The Tenth Circuit has recognized that giving an opinion "little weight" is "effectively rejecting" it.  *Chapo v. Astrue*, 682 F.3d 1285, 1291

(10th Cir. 2012); *see also Quintero v. Colvin*, 567 F. App'x 616, 620 n.6 (10th Cir. 2014) ("Although the ALJ actually stated she assigned the opinion 'little, if any weight' rather than outright rejecting it, we have recognized such statements operate as the equivalent of a rejection of the opinion."). So, no reversible error occurred in this context.

Plaintiff further complains about the ALJ's statement that Dr. Robison's opinion that Plaintiff must "walk around every five minutes for five minutes at a time throughout the day" "seems less than practical." Doc. 18, at 19. But the undersigned agrees with the ALJ. A person that must walk for five minutes, every five minutes, would be walking all day. More importantly, the ALJ rejected the limitation because it "is inconsistent with the [physician's] earlier findings that [Plaintiff] can sit and stand in increments . . . ." AR 27. Again, the undersigned finds no reversible error in this argument.

Next, Plaintiff argues that in rejecting Dr. Robison's opinion, the ALJ "pays no reference to the objective findings in MRI reports." Doc. 18, at 19. This is simply incorrect. The ALJ specifically discussed the MRI results and gave substantial weight to the ME's opinion that while the MRI results were "evidence of chronic low back and neck pain," they provided "no basis" for "less than sedentary restrictions." AR 27-28; *see also id*. at 21. As discussed

below, *infra* § IV(C)(4), the ALJ committed no error in adopting the ME's opinion.

Plaintiff then complains that the ALJ failed to: (1) consider all the relevant *Drapeau* factors before rejecting Dr. Robison's opinion; (2) provide enough analysis for Plaintiff to "discern the ALJ's rationale"; and, (3) identify . . . which records [are] inconsistent." Doc. 18, at 21-22. The undersigned disagrees. Reading the ALJ's analysis with common sense, it is clear to the undersigned that the ALJ: (1) understood and considered that Dr. Robison had a treating relationship with Plaintiff; (2) discussed the lack of relevant physical findings, Dr. Robison's pain medication prescription, and the MRI results; (3) found no relevant evidence to support Dr. Robison's opinion; and, (4) believed his opinion to be internally inconsistent. *See Keyes-Zachary*, 695 F.3d at 1167. An ALJ need not articulate every factor, and "[t]hat the ALJ did not explicitly discuss all the . . . factors for each of the medical opinions . . . does not prevent this court from according his decision meaningful review." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

Finally, in a one-sentence statement, Plaintiff claims that "[i]n light of the evidence in the record as a whole, the ALJ's rejection of Dr. Robison's opinion is not supported by substantial evidence." Doc. 18, at 21. But as reiterated here many times: (1) Dr. Robison did not support his findings with

relevant physical examinations; (2) his opinion is internally inconsistent; and (3) the ME testified that the MRI results do not provide a basis for less than sedentary work. Plaintiff cites to no medical evidence that the ALJ ignored and she discussed and properly discounted Dr. Robison's opinion. The undersigned finds no grounds for reversal in this fatally underdeveloped argument.

In sum, the undersigned finds that the ALJ identified specific and legitimate reasons for rejecting Dr. Robison's opinion and provided sufficient analysis for this Court's review. "Nothing more was required in this case." *Oldham*, 509 F.3d at 1258.

### 3. The nurse practitioner's opinions.

Nurse Smith completed two physical capacity questionnaire forms, one in 2008 and one in February 2012. In each, she opined that Plaintiff was capable of performing the equivalent of less than sedentary work. AR 493-97, 653-57. To support her opinions, Nurse Smith cited "MRI, gait, posture, monthly visits." *Id.* at 493; *see also id.* at 653. Notably, there are no existing treatment notes bearing Nurse Smith's signature. *See id.* at 236-725.

The ALJ rejected Nurse Smith's opinions on numerous grounds, finding that:

Although [Plaintiff] may have been a patient at [the nurse practitioner's] clinic since January of 2004, she had not actually examined [Plaintiff] on a monthly basis since that time, despite that notion upon the form. Regardless, Ms. Smith indicated [Plaintiff] has symptoms of pain, numbness, tingling, and fatigue, consistent with the findings upon MRI studies, gait, posture, and monthly visits. It is noted that the corresponding computer generated treating office notes are quite void of any documentation of altered gait, notes of posture, or other information that would be key in correlating the subjective symptoms to musculoskeletal or neurological findings. . . . The sum total of sitting and walking of less than four hours does not account for activities during the remainder of [Plaintiff's] eight-hour workday. . . . The form Ms. Smith completed in February 2012 is almost identical to the first form with the modification omitting any requirement that [Plaintiff] must have periods of walking around during an eight-hour workday; instead, she wrote that [Plaintiff] is not working and that he states he cannot work. . . . This notation[] suggests that perhaps Ms. Smith completed these forms based upon [Plaintiff's] subjective statements rather than based upon objective medical findings. . . .

[T]he opinion of Ms. Smith is inconsistent with the contemporaneous treating medical records . . ., as well as the record as a whole. Furthermore, the opinion of Ms. Smith is inconsistent with the findings and opinion of her supervising physician, Mel Robison, D.O.

*Id.* at 26-27.

Plaintiff first complains that it is "unclear where the ALJ received such knowledge" that Nurse Smith "had not actually examined the claimant on a monthly basis . . . ." Doc. 18, at 16. But as noted above, Nurse Smith's signature appears nowhere in the treatment notes, nor is there any indication that Nurse Smith personally examined Plaintiff.

15

Plaintiff next argues that the ALJ "summarily concludes, without an evaluation of the factors outlined in SSR 06-3p" that Nurse Smith's opinion is entitled to little weight simply because she is a nurse practitioner. *Id.* Again, a plain reading of the ALJ's opinion dispels any such argument. Clearly, the ALJ considered the nurse's opinion, but found: (1) no evidence that Nurse Smith had personally physically examined Plaintiff; (2) inconsistencies in the nurse's opinions, both internally and as compared to Dr. Robison's opinion; and, (3) no objective medical evidence to support Nurse Smith's opinions. The ALJ's failure to specifically discuss every single factor is not grounds for reversal, *see Oldham*, 509 F.3d at 1258, and the undersigned finds that the ALJ properly evaluated Nurse Smith's opinions under the relevant regulations.

### 4. The ME's opinion.

As noted above, *see supra* § IV(B), the ME testified that the MRI results – the only real objective medical evidence – could "possibl[y]" support Nurse Smith's opined limitations, but that he could not say that it was "probable." AR 796; *see also id*. at 797-98. And while the undersigned agrees that the ME provided more narrative than actual opinion, he did clearly testify that he found "no basis in the record" that Plaintiff was limited to sedentary work. *Id.* at 792. The ALJ gave the ME's opinion substantial weight. *Id.* at 27.

According to Plaintiff, it is "unclear . . . what portion of [the ME's] opinion the ALJ adopted." Doc. 18, at 20. The undersigned finds it clear that the ALJ gave substantial weight to the ME's opinion that Plaintiff is not limited to sedentary work, and sees no grounds for reversal in Plaintiff's argument.

### 5. The state agency physicians' opinions.

In May 2005, a state agency physician opined that Plaintiff could perform the equivalent of light work, AR 297, and in December 2005, a second state agency physician agreed. *Id.* at 397. The ALJ gave these opinions substantial weight "as generally consistent with the objective medical evidence" but granted Plaintiff greater postural and environmental limitations than either state agency physician recommended. *Id.* at 26.

Plaintiff complains that these two opinions were formulated two years before his amended onset date and were thus based on an incomplete medical record. Doc. 18, at 19. However, neither Dr. Robison nor Nurse Smith documented relevant physical examinations, and thus the only relevant objective medical *evidence* existing in the record after 2005 is Plaintiff's multiple MRIs. And, the ME testified that these tests did *not* demonstrate that Plaintiff was limited to sedentary work. So, while the state agency opinions might have been issued early in the case, Plaintiff points to no post-

2005 evidence that calls those opinions into question and the undersigned finds no grounds for reversing the Commissioner's decision.

**D. The ALJ's alleged errors in assessing Plaintiff's credibility.**

The ALJ extensively discussed the medical evidence and reiterated Plaintiff's testimony. AR 20-22, 24-28. Ultimately, she found Plaintiff's allegations not entirely credible. *Id.* at 25. Particularly, the ALJ stated that:

> In the instance case, the issue is not the existence of pain, but rather the degree of incapacity incurred because of it. While the claimant complains of severe pain, it does not seem reasonable to conclude from the minimal findings in evidence that such could be the basis for the degree of pain alleged. Prior to March 27, 2012, [Plaintiff] did not appear to be experiencing progressive physical deterioration, which[], might be expected with intense and continuous pain.

*Id.*

Plaintiff challenges this credibility determination, claiming that the ALJ: (1) employed boilerplate language and reversed the RFC and credibility assessments; (2) failed to provide any evidence to support her conclusions; and (3) failed to properly evaluate all the relevant factors in assessing Plaintiff's credibility. Doc. 18, at 25-26. It appears that Plaintiff also believes that the testimony shows Plaintiff to be disabled. *Id.* The undersigned finds no reversible error in the ALJ's credibility assessment.

### 1. The ALJ's duty to assess credibility.

Once an ALJ finds that a claimant has a pain-producing impairment, she must take the next step and assess the claimant's credibility. *See* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). In addition to objective evidence, the ALJ may consider certain factors in evaluating a claimant's credibility, including the claimant's daily activities; the location, duration, and intensity of the claimant's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; any treatment other than medications the individual receives or has received for pain or other symptoms; any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *See* SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996); *Keyes-Zachary*, 695 F.3d at 1167.

### 2. The ALJ's alleged reversal of the RFC and credibility assessment and use of boilerplate language.

Using an often employed phrase, the ALJ stated that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible prior to March 27, 2012, to the extent they are inconsistent with the residual functional capacity assessment." AR 25.

Based on this boilerplate language, Plaintiff argues that the ALJ improperly determined Plaintiff's RFC first, and then evaluated his credibility. Doc. 18, at 24. However, the ALJ considered Plaintiff's testimony and the medical evidence, and gave "no indication that [s]he tailored that conclusion to fit [the] RFC determination"; so, the undersigned finds no grounds for reversal on this issue. *Moua v. Colvin*, 541 F. App'x 794, 800 (10th Cir. 2013) (rejecting plaintiff's claim that the ALJ relied on boilerplate language and improperly reversed the RFC and credibility decisions, where it was clear that the ALJ considered the testimony and medical evidence and had "giv[en] no indication that he tailored that conclusion to fit his RFC determination"); *see also McDonald v. Astrue*, 492 F. App'x 875, 884-85 (10th Cir. 2012) (rejecting plaintiff's claim that the ALJ created the RFC first and then "simply rejected her testimony to the extent it indicated more severe restrictions," in part because the ALJ "related [her] testimony, then carefully reviewed the other evidence, noting specific discrepancies, before concluding that her testimony was not fully credible").

### 3. The ALJ's alleged failure to cite evidence to support her credibility determination.

Plaintiff next complains that the ALJ failed to cite any evidence to support three particular conclusions: (1) Plaintiff "did not 'appear to be experiencing progressive physical deterioration;'" (2) his "'routine did not

appear restricted by his alleged disability; but, rather by choice;'" and (3) he is "'independent in his personal care . . . is able to prepare simple meals' and do 'light housework . . . is able to watch television . . . count change, pay bills, and handle checking accounts.'" Doc. 18, at 24-25 (quoting AR 25). The undersigned finds no reversible error.

As detailed above, the ALJ discussed all the medical evidence and testimony, AR 20-22, 24-28, and sufficiently weighed the medical opinions. *See supra* § IV(C)(2)-(5). She engaged in the above analysis before assessing Plaintiff's credibility, and reading her opinion with common sense, it is clear to the undersigned that the ALJ's statements refer to: (1) the lack of physical examinations involving musculoskeletal limitations; (2) the lack of treatment notes involving an altered gait, problems with posture, ambulation, or standing; (3) Dr. Robison's prescribing of pain medication without "any further definitive treatment recommendations," AR 21; and (4) the ME's testimony that the MRIs – the only objective evidence in the record – do not show that Plaintiff can perform less than sedentary work. In sum, the ALJ's opinion is replete with citation to the medical record, and the undersigned finds Plaintiff's argument to the contrary meritless.

Further, the undersigned notes that Plaintiff stated in his functional report that he: (1) had no issues with his own personal care; (2) prepared

daily meals in the microwave; (3) shops in stores once a week; (4) handles his own finances; (5) watches television; and (6) socializes with his family. *Id.* at 201-05. This evidence supports the ALJ's finding that Plaintiff is "independent in his personal care. . . . is able to prepare simple meals" and do "light housework . . . is able to watch television. . . . count change, pay bills, and handle checking accounts." *Id.* at 25. While it would have been preferable for the ALJ to have included an exact citation to this evidence, the undersigned finds any possible error harmless. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (holding that a court may find an ALJ's error harmless if it can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way").

### 4. The ALJ's alleged failure to properly evaluate the credibility factors.

Plaintiff also alleges that the ALJ failed to consider all the necessary factors in assessing his credibility. Doc. 18, at 25-26. However, Plaintiff does not identify which factor the ALJ ignored, and the undersigned finds that the ALJ discussed Plaintiff's: daily activities, location and intensity of pain, aggravating symptoms, medications, treatments, and other measures used to alleviate pain. AR 25-28. This Court does not require technical perfection,

*see Keyes-Zachary*, 695 F.3d at 1167, and there are no grounds for reversal in this skeletal argument.

### 5. The alleged lack of substantial evidence.

Finally, Plaintiff recites his and his daughter's testimony suggesting disabling pain. Doc. 18, at 25-26. Plaintiff raises no real argument with the citation, but the undersigned assumes he is suggesting that the testimony shows him to be disabled. However, the ALJ considered this testimony, and the undersigned will not engage in re-weighing the evidence. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (holding it is not the court's province to "reweigh the evidence"); *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990) ("Credibility determinations are peculiarly the province of the finder of fact . . . .").

### E. The ALJ's alleged failure to properly consider witness testimony.

In his last allegation, Plaintiff claims that the ALJ failed to properly consider his daughter's testimony under SSR 06-03p. Doc. 18, at 26-27. Again, the undersigned finds no grounds for reversal.

As discussed above, SSR 06-03p guides the ALJ in evaluating "other source" opinions. In evaluating testimony from "non-medical sources," such as spouses, parents, friends, and neighbors, etc., the ALJ should consider: (1) the nature and extent of the relationship; (2) whether the evidence is

consistent with other evidence; and (3) any other factors that tend to support or refute the evidence. SSR 06-03p, 2006 WL 2329939 at *6.

The ALJ discussed Plaintiff's daughter's testimony and discounted it in part because "as the [Plaintiff's] daughter . . ., the witness cannot be considered a disinterested third party witness whose testimony would not tend to be colored by affection for [Plaintiff] and a natural tendency to agree with the symptoms and limitations [Plaintiff] alleges." AR 29. The ALJ then stated that "[m]ost importantly, significant weight cannot be given this witness testimony because it is simply not consistent with the preponderance of the opinions and observations by medical doctors . . . ." *Id.* Clearly, this consideration satisfied SSR 06-3p and the ALJ's findings are legitimate grounds for discrediting Plaintiff's daughter's testimony. *See, e.g., Croley v. Colvin*, Case No. CIV-12-1101-JWL, 2013 WL 615564, at *10 (D. Kan. Feb. 19, 2013) (unpublished order) (finding "no error" under SSR 06-3p where the ALJ rejected plaintiff's wife's testimony in part because it was "based on family loyalties," and "does not outweigh the accumulated medical evidence").

## V.     Recommendation and notice of right to object.

For the foregoing reasons, the undersigned recommends that the court affirm the Commissioner's decision.

The undersigned advises the parties of their right to object to this report and recommendation no later than June 24, 2015, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). The undersigned further advises the parties that failure to make timely objection to this report and recommendation waives their right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This report and recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 4th day of June, 2015.


SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE